FILED'09 DEC 18 15:31USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

MICHELLE L. REED,                              08-CV-6341-BR

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


KATHERINE TASSINARI
1700 Valley River Drive
Eugene, Oregon  97401
(541) 434-6466

       Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1  - OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Michelle L. Reed seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Reed's protective

application for Disability Insurance Benefits (DIB).

    This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  Following a review of

the record, the Court **REVERSES** the decision of the Commissioner

and **REMANDS** this matter pursuant to sentence four of 42 U.S.C.

§ 405(g) for further administrative proceedings consistent with

this Opinion and Order.


## ADMINISTRATIVE HISTORY

    Reed filed her most recent applications for DIB on May 25,

2005.  Tr.[1] 20, 70-72.  The applications were denied initially

---

    [1] Citations to the official transcript of record filed by
the Commissioner on February 24, 2009, are referred to as "Tr."

2  - OPINION AND ORDER

and on reconsideration.  Tr. 23-25, 27-31.  An Administrative Law
Judge (ALJ) held a hearing on February 7, 2008.  Tr. 413-61.  At
the hearing, Reed was represented by an attorney.  Tr. 32-33,
413-15.  Reed and a vocational expert (VE) testified at the
hearing.  Tr. 413-61.

The ALJ issued a decision on April 21, 2008, in which he
found Reed is not disabled and, therefore, is not entitled to
benefits.  Tr. 13-19.  That decision became the final decision of
the Commissioner on September 2, 2008, when the Appeals Council
denied Reed's request for review.  Tr. 6-8.


### BACKGROUND

Reed was 47 years old at the time of the hearing before the
ALJ.  Tr. 70.  Reed completed her GED as well as Associate's
Degrees in Early Child Development and Science/General Studies.
Tr. 416.  She has worked as a house worker/house attendant and as
an arts-and-crafts instructor.  Tr. 81-82, 457.  Reed alleges a
disability onset date of September 25, 1991.  Tr. 70.

Reed was diagnosed with interstitial cystitis (IC), a
disorder of the bladder.  Tr. 174-79, 196-99, 217-18, 223, 241,
251, 257, 314, 338, 342-43, 390, 392.  Since shortly after Reed
gave birth to her daughter in 1991, Reed has suffered from a
number of symptoms of IC, which include frequent, painful, and
labored urination; bladder infections; pain in the abdomen, back,

and legs; and fatigue resulting from interrupted sleep.
Tr. 109-15, 137, 198, 448.

Reed also has been diagnosed with myofascial pain and with
recurrent pain in her cervical spine, left shoulder, and both
wrists.  Tr. 222-27, 241, 248, 257, 307-08, 314, 390, 426.  Reed
also suffers from shortness of breath, which has been diagnosed
as dyspnea, sigh dyspnea, and related to anxiety.  Tr. 200, 203-
05, 334, 336, 338-42, 356-57.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.*

4  - OPINION AND ORDER

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins*, 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially

5  - OPINION AND ORDER

dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R.
§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. *Stout*, 454 F.3d
at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commis-
sioner determines the claimant's impairments meet or equal one of
the listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity. *Stout*, 454
F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC). The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations. 20 C.F.R.
§ 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations

at 20 C.F.R. part 404, subpart P, appendix 2.  If the
Commissioner meets this burden, the claimant is not disabled.
20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Reed did not engage in
substantial gainful activity between her alleged onset date of
September 25, 1991, and January 2007.  Tr. 15.  From January 2007
through December 2007, the ALJ found Reed earned $12,245.19,
which "exceeds presumptive substantial gainful activity and
precludes a finding of disability for 2007."  Tr. 15.  Reed,
however, was no longer working as of February 7, 2008.  Tr. 15.
Thus, Reed is eligible for benefits from September 25, 1991,
through December 2006 and from January 2008 to the end of her
coverage on September 30, 2009.

At Step Two, the ALJ found Reed has the severe impairment of
interstitial cystitis.  Tr. 18-21.  The ALJ, however, found
Reed's anxiety, depression, and chronic myofascial pain are not
severe impairments.  Tr. 16.

At Step Three, the ALJ found Reed's impairments do not meet
or equal the criteria for any Listed Impairment under 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 22-24.  The ALJ concluded
Reed is able to perform medium-exertion work.  Tr. 16.  The ALJ,
however, did not provide a function-by-function description of

Reed's RFC; *i.e.*, her physical or mental work-related capabilities.

At Step Four, the ALJ found Reed can return to her past relevant work as a home attendant and/or house worker.  Tr. 18. The ALJ, therefore, found at Step Four that Reed was not disabled, and the ALJ did not proceed to Step Five.  Tr. 18.


## DISCUSSION

Reed contends the ALJ erred by failing (1) to credit the opinion of treating physician Troy Garrett, M.D.; (2) to give clear and convincing reasons for discrediting Reed's statements about the intensity, persistence, and limiting effects of her symptoms; (3) to consider all of Reed's severe impairments; and (4) to include all of Reed's relevant work-related limitations when formulating Reed's RFC.

**I.    Dr. Garrett.**

Reed contends the ALJ erred by failing to credit the opinion of Dr. Garrett, one of Reed's long-time treating physicians.  An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th

Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

**A.  Dr. Garrett's Opinion.**

Dr. Garrett was Reed's treating physician for over ten years beginning in 1994 and treated Reed on numerous occasions during that time.  Tr. 241-51, 332-49, 359.  Dr. Garrett diagnosed Reed with IC (including related chronic pain symptoms), chronic myofascial neck pain, tendonitis of the wrists and left shoulder, and sigh dyspnea due to anxiety.  Tr. 241, 248, 251, 333-34.

In a letter dated December 2, 2005, Dr. Garrett noted Reed's recurrent and "significant flareups" of "chronic pelvic pain" since approximately 1991.  Tr. 359.  Based on his long-term treatment of Reed, Dr. Garrett concluded "it is unlikely that she would have maintained full time employment without missing at least two days of work per month."  Tr. 359.

**B.  ALJ's Decision.**

In finding Reed is capable of medium-exertional work, the ALJ discredited Dr. Garrett's opinion.  Tr. 18.  The ALJ discredited Dr. Garrett's opinion on two grounds:  (1) The medical evidence does not support Dr. Garrett's opinion that Reed could not sustain work activity without missing at least two days per month and (2) Reed's work history undermined Dr. Garrett's opinion regarding Reed's ability to sustain employment.  Tr. 18.

### 1.   Consistency with other Medical Evidence.

The ALJ rejected Dr. Garrett's opinion on the ground
that he did not find any medical evidence in the record "to
corroborate" Dr. Garrett's opinion that it is unlikely Reed could
work full time without missing at least two days of work per
month.  Tr. 18, 359.  Corroboration, however, is not the standard
for assessing the opinion of a treating physician.  See Lester,
81 F.3d at 830-32.  The ALJ did not identify any medical evidence
in the record by a treating, examining, or nonexamining physician
that contradicts Dr. Garrett's opinion, and, therefore, the ALJ
may only discredit Dr. Garrett if he provides clear and
convincing reasons for doing so.  See id.

In any event, the record contains substantial evidence
to support both Dr. Garrett's diagnosis of Reed's IC and Reed's
consistent complaints of associated abdominal pain.  Moreover,
Dr. Garrett's diagnosis of IC was confirmed by a clinical
cytoscopy performed by Randal A. Aaberg, M.D.  Tr. 174-79, 195,
359.  Although there is not another medical opinion in the record
that Reed is likely to miss work due to flare-ups of IC symptoms,
that lack of corroboration, as noted, is not a sufficient basis
to discredit a treating physician.  Dr. Garrett's long-standing
relationship with Reed as her treating physician makes him
"especially qualified to evaluate reports from examining doctors,
to integrate the medical information they provide, and to form an

11 - OPINION AND ORDER

overall conclusion as to functional capacities and limitations,
as well as to prescribe or approve the overall course of
treatment." *Id.* at 833.  The ALJ must "give weight not only to
the treating physician's clinical findings and interpretation
of test results, but also to his subjective judgments." *Id.* at
832-33.

        **2.   Reed's Work History.**

        As noted, the ALJ also discredited Dr. Garrett's
opinion on the ground that Reed sustained work as a caregiver
throughout 2007 and worked part-time as an arts-and-crafts
instructor.  Tr. 18.  At most, however, the record shows Reed
worked only 9-20 hours per week in part-time positions with
varying schedules.  Tr. 433-42.  Reed testified she lost both her
position as an arts-and-crafts instructor and as a caregiver due
to health-related absences from work.  Tr. 421-22, 439-42.
Moreover, Reed testified the employer accommodated her need for
days off due to her impairments when she was an arts-and-crafts
instructor.   Tr. 438-39.  Reed's work history, therefore, does
not undermine Dr. Garrett's conclusion.

      On this record, therefore, the Court concludes the ALJ erred
when he failed to provide clear and convincing reasons for
rejecting Dr. Garrett's opinion that Reed would miss at least two
days of work per month due to her symptoms.  The Court,
therefore, credits Dr. Garrett's opinion as true.  *See Benecke v.*

*Barnhart*  379 F.3d 587, 594 (9th Cir. 2004)(when "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the court credits that opinion as true). *See also Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is credited as a matter of law).

## II.  Reed's Testimony.

Reed also contends the ALJ erred by failing to provide clear and convincing reasons for rejecting her statements as to the persistence, intensity, and limiting effects of her impairments. Tr. 17-18.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  She must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and

convincing reasons for doing so. *Lester*, 81 F.3d at 834. *See*
*also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).
General assertions that the claimant's testimony is not credible
are insufficient. "[T]he ALJ must identify what testimony is not
credible and what evidence undermines the claimant's complaints."
*Lester*, 81 F.3d at 834.

The ALJ found Reed satisfied the *Cotton* test by providing
evidence that she has a medically determinable impairment that
could be expected to produce some degree of the symptoms she
alleges. Tr. 17. The ALJ, however, determined Reed's subjective
testimony about the "intensity, persistence, and limiting
effects" of her symptoms "are not credible." Tr. 17. Thus, the
ALJ must provide clear and convincing reasons for rejecting
Reed's symptom testimony. *Lester*, 81 F.3d at 834.

Reed testified she is unable to work on a regular and
continuing basis due to "flare-ups" of pain in her back, abdomen,
neck, shoulder, and wrists; frequent, urgent, and painful
urination; and fatigue due in part to the medications she takes
and having to urinate frequently at night. Tr. 440-50.

The ALJ discredited Reed's testimony on the following
grounds: (1) Reed requires only conservative treatment to
control her symptoms successfully, (2) Reed's work history
undermines her testimony as to the disabling nature of her
symptoms, (3) the record does not reflect Reed's symptoms are as

14 - OPINION AND ORDER

serious as those outlined in SSR 02-2p, (4) Reed "engages in a lot of activities despite her symptoms," (5) Reed "seems to have become dependent on narcotic medication for continually escalating 'pain,'" and (6) Reed's self-diagnoses relating to her symptoms of shortness of breath reflect an exaggeration of her symptoms.   Tr. 17-18.

**A.   Conservative Treatment Only.**

As a basis for discrediting Reed's testimony, the ALJ found Reed requires only conservative treatment such as narcotic pain medication to treat her symptoms successfully.   Tr. 17.   The ALJ's finding, however, is not supported by the record.   The record reflects Reed has for more than 16 years consistently complained of symptoms that could be expected to result from IC, and her treating physicians have prescribed numerous medications in an attempt to treat those symptoms.   See SSR 02-2p, at *1 (sets out symptoms of IC that are consistent with Reed's complaints, including urinary frequency, urgency, and pain; fibromyalgia; and chronic fatigue).   The record also reflects Reed underwent two major surgeries related to her abdominal pain: a cystoscopy in 1995 and a hysterectomy in 2002.   Tr. 174-78, 200-02.   Finally, SSR 02-2p, which addresses IC and is cited by the ALJ, describes the difficulty with treating IC:

> The causes of IC are currently unknown, and
> treatments are directed towards relief of
> symptoms.   While no treatment is uniformly
> effective for everyone, there are many

> treatments available, and individuals may
> obtain some measure of relief.  However,
> response to treatment is variable, and some
> individuals may have symptoms that are
> intractable to the current treatments
> available.

SSR 02-2p, at *2.  Thus, even if Reed has only received

conservative treatment for her pain symptoms, that is not a clear

and convincing basis for the ALJ to discredit Reed's subjective

symptom testimony.

### B.   Work History.

The ALJ also cites Reed's ability to work as a basis for

discrediting her testimony.  Tr. 17.  As noted, Reed has been

able to perform part-time work as a caregiver and an arts-and-

crafts instructor at times during her alleged period of

disability.  Reed, however, testified she was unable to maintain

either part-time position because she was absent from work too

often due to flare-ups of her symptoms.  Tr. 421-22, 439-42.

Thus, Reed's work history is not inconsistent with Reed's

testimony that she is unable to sustain work on a regular basis.

### C.   SSR 02-2p.

The ALJ also relies on SSR 02-2p to discredit Reed's

testimony because he found her symptoms were not as severe as

those listed in SSR 02-2p (difficulty focusing due to abdominal

pain, disrupted sleep, and urination as frequently as every ten

to 15 minutes).  Tr. 17-18.  SSR 02-2p, however, indicates IC

symptoms will likely vary from person to person, IC can be severe

16 - OPINION AND ORDER

enough to cause disability, and "[t]he effects of IC may not be obvious." *Id.*, at *2-5. Moreover, the record reflects Reed routinely reported symptoms consistent with those set out in SSR 02-2p, including an inability to focus due to pain and fatigue from the need to use the restroom numerous times through the night (Reed reported having to urinate 23 times in a 24-hour period). Tr. 109-15, 137, 198-99, 442-50. Thus, SSR 02-2p does not provide a basis for the ALJ to discredit Reed and, in fact, tends to corroborate Reed's testimony.

### D.   Reed's Activities.

The ALJ also found the fact that Reed "engages in a lot of activities despite her symptoms" undermines her credibility. Tr. 18. Although the ALJ specifically points out that Reed is able to perform some household chores such as doing laundry, to engage in hobbies such as arts and crafts, to read, to use the internet, and to ride a bicycle, Tr. 17, the ALJ did not find Reed is able to perform any of these activities on a sustained basis or without exacerbating her symptoms.

Reed stated in her Functional Report, Fatigue Questionnaire, and Pain Questionnaire that she can perform the listed activities, but she states she can only perform them for a short time, must pace herself, and must take frequent rests to avoid aggravating her symptoms to such a degree that she may need up to two days to recover. Tr. 103, 105-06, 109-12. For example, Reed

stated doing laundry, mopping the floor, and driving a car for
under an hour "greatly increases her pain." Tr. 103-06.  These
statements are consistent with her testimony that she fatigues
easily and that she exacerbates her symptoms by engaging in such
activities.  Tr. 442-50.  The fact that Reed performs some
activities of daily living, therefore, is not inconsistent with
her testimony and is not a sufficient basis for the ALJ to
discredit her testimony because the record does not show Reed can
perform such activities regularly or on a sustained basis.

    E.    Narcotic Dependence.

    The ALJ also found Reed is dependent on narcotics and
exhibits drug-seeking behavior.  Tr. 18.  The ALJ noted there is
"a pattern that when the claimant's treating physicians express
concern over the amount and continued use of Vicodin, the
claimant changes providers and the cycle continues."  Tr. 18.
The record, however, reflects Dr. Garrett was Reed's primary-care
physician from 1994 through 2005, which contradicts the ALJ's
conclusion that Reed switched treating physicians regularly to
obtain more pain medication.

    The ALJ also notes the concerns stated by Kaiser physicians
about Reed's reliance on narcotic pain medication and her
"repeated 'forgetting' to provide her prior medical records."
Tr. 18.  The record reflects concern over Reed's use of pain
medication by Timothy J. Connelly, M.D., and Geoffrey H. Gordon,

M.D., who treated Reed on referral from Howard M. Baylies, M.D., another one of her treating physicians. Tr. 388-93. Neither Dr. Connelly nor Dr. Gordon found Reed was dependent on narcotics or accused Reed of drug-seeking behavior. Tr. 388-93. In fact, Dr. Baylies referred Reed to Drs. Connelly and Gordon to help with Reed's pain management and to address her concern that the medication she was taking was not working. Tr. 394.

In addition, Reed sought an alternative to her use of Vicodin, which tended to make her sick if she took more than six per day. Tr. 394. Dr. Connelly put Reed on an "Opiate Therapy Plan" on his initial consultation with Reed because he did not yet have access to her medical records. Tr. 398. Dr. Connelly prescribed Tramadol for Reed in an attempt to taper her Vicodin use. Tr. 398. Reed agreed to the plan, to take urine tests to ensure that she was compliant, and to attend a pain-management group. Tr. 388. Although Dr. Connelly stated Reed forgot to provide her "remaining" medical records for the two years prior to her first visit to Dr. Connelly, his statement implies Reed had already provided some medical records. Tr. 390. Moreover, in her consultation with Dr. Connelly, Reed provided an extensive history of her use of Vicodin and numerous other trial prescriptions for treating her ongoing pain. Tr. 389-90. In his treatment notes, Dr. Connelly does not suggest Reed was attempting to conceal her use of pain medication, and, in fact,

19 - OPINION AND ORDER

those notes reflect Reed was agreeable to Dr. Connelly's plan for reducing her use of Vicodin.  Tr. 390.

Thus, Reed's alleged dependence on narcotics and drug-seeking behavior are not a sufficient basis for the ALJ to reject Reed's subjective pain testimony.

**F.    Exaggeration of Symptoms.**

Finally, the ALJ found Reed's tendency to self-diagnose, particularly with respect to the alleged shortness of breath she suffers from, is a basis for concluding that Reed exaggerates her symptoms.  Tr. 18.  The ALJ did not give any reason for concluding Reed's interest in and study of the conditions that affect her health undermines her credibility.  Moreover, none of Reed's physicians state Reed exaggerates her shortness of breath. Tr. 200-04, 334-42, 356-57.  In fact, her shortness of breath was diagnosed as dyspnea or "sigh dyspnea," which Susan Cho, M.D., described as a heightened awareness of the body's sighing and yawning reflexes.  Tr. 203-04.  Dr. Cho stated such a phenomenon is "normal" and indicated it was aggravated by Reed's anxiety. Tr. 204.  Dr. Garrett agreed with Dr. Cho and provided a similar diagnosis and etiology.  Tr. 334-42.

In summary, the Court finds on this record that the ALJ erred when he did not provide clear and convincing reasons supported by substantial evidence in the record for rejecting Reed's subjective symptom testimony.

**III. Additional Severe Impairments.**

Reed also contends the ALJ erred by failing to find Reed's mental impairments were severe and to include her resulting limitations in the ALJ's evaluation of Reed's RFC.  In particular, Reed contends her anxiety is a severe impairment because the related symptom of shortness of breath more than slightly affects her functioning.  Reed, however, does not identify any specific medical evidence in the record to support her position.

As noted, the ALJ found Reed's anxiety was not severe. Specifically, the ALJ concluded Reed's anxiety and shortness of breath are the result of situational stressors and are not ongoing problems.  Tr. 16.  The ALJ did not find any evidence in the record to establish that Reed's anxiety and related symptoms "have more than a minimal effect on her ability to perform basic work activity."  Tr. 15-16.  The ALJ pointed out that Reed did not require any counseling or psychiatric treatment to address her anxiety.  Tr. 16.

Although Dr. Cho treated Reed for complaints of shortness of breath, she did not describe any severe symptoms or significant limitations resulting from Reed's "sigh dyspnea."  Tr. 203-05. In fact, Dr. Cho stated, "There really is no treatment for this except reassurance that this is a normal phenomenon."  Tr. 204. Even Dr. Garrett did not describe Reed's anxiety or related

symptoms in his letter of December 2, 2005, as a basis for his
opinion that Reed could not maintain full-time employment without
missing at least two days of work per month.  Tr. 359.

Thus, there is substantial evidence in the record to support
the ALJ's conclusion that Reed's anxiety and related symptoms are
not severe.  To the extent, however, the record reflects Reed's
anxiety or shortness of breath limit Reed in the performance of
work-related activities, such limitations must be considered in
formulating Reed's RFC.

**IV.  Reed's RFC.**

The Court cannot properly review the remaining challenges
brought by Reed with respect to her RFC because the ALJ did not
provide the basis for his assessment of Reed's RFC in his
opinion.  Instead the ALJ merely makes a conclusory statement
with respect to Reed's functional capacity that she is capable of
"medium exertional work."  Tr. 18.

Between Steps Three and Four of the sequential evaluation,
the ALJ must assess the claimant's RFC. *Bray v. Comm'r Soc. Sec.
Admin.*, 554 F.3d 1219, 1222-23 (9th Cir. 2009). *See also* 20
C.F.R. § 404.1520(e).  The ALJ cannot "merely" express a
claimant's RFC in terms of the claimant's exertional capacity,
but must include

> a function-by-function assessment based upon
> all of the relevant evidence of an
> individual's ability to do work-related
> activities.  At step 4 of the sequential

> evaluation process, the RFC must not be
> expressed initially in terms of the
> exertional categories of "sedentary,"
> "light," "medium," "heavy," and "very heavy"
> work because the first consideration at this
> step is whether the individual can do past
> relevant work as he or she actually performed
> it.

SSR 96-8p, at *3.  Moreover, this function-by-function assessment

is crucial to any Step Four determination that a claimant can

return to her past relevant work.

SSR 96-8p also provides:

> [W]ithout the initial function-by-function
> assessment of the individual's physical and
> mental capacities, it may not be possible to
> determine whether the individual is able to
> do past relevant work as it is generally
> performed in the national economy because
> particular occupations may not require all of
> the exertional and nonexertional demands
> necessary to do the full range of work at a
> given exertional level.
>
> * * *
>
> It is especially important that adjudi-
> cators consider the capacities separately
> when deciding whether an individual can do
> past relevant work.

Id., at *3-5.  In cases involving claimants with IC, an

assessment of the claimant's functional limitations is

particularly important because

> IC can cause limitation of function. The
> functions likely to be limited depend on many
> factors, including urinary frequency and
> pain.  An individual may have limitations in
> any of the exertional functions such as
> sitting, standing, walking, lifting,
> carrying, pushing, and pulling.  It also may

23 - OPINION AND ORDER

affect ability to do postural functions, such
as climbing, balancing, stooping, and
crouching.  The ability to tolerate extreme
heat, humidity, or hazards also may be
affected.

* * *

An assessment also should be made of the
effect IC has upon the individual's ability
to perform routine movement and necessary
physical activity within the work environ-
ment.  Individuals with IC may have problems
with the ability to sustain a function over
time.

* * *

In cases involving IC, fatigue may
affect the individual's physical and mental
ability to sustain work activity.  This may
be particularly true in cases involving
urinary frequency.

SSR 02-2p, at *5-6.

Thus, the ALJ erred when he failed to assess and to describe

Reed's RFC adequately when he concluded Reed is capable of

performing her past relevant work as home attendant and/or house

worker and, therefore, is not entitled to benefits.  Tr. 18.


## REMAND

The decision whether to remand this case for further

proceedings or for the payment of benefits is a decision within

the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or

for immediate payment of benefits generally turns on the likely

utility of further proceedings.  *Id*. at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman*, 211 F.3d at 1178.  The
court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id*.  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id*. at 1178 n.2.

Here the Court finds further proceedings are necessary to
evaluate Reed's RFC to include considerations of Reed's
exertional and nonexertional limitations on a function-by-
function basis, particularly with respect to those limitations
identified by Dr. Garrett.  On the basis of Reed's functional
capacity, the ALJ must also determine whether, consistent with
the *Dictionary of Occupational Titles*, Reed can perform her past
relevant work or other jobs that exist in significant numbers in
the national economy.

25 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

If the Commissioner finds Reed is disabled on remand; the Commissioner awards Reed past-due benefits; and, as a result, Reed intends to submit an application for attorneys' fees under 42 U.S.C. § 406(b), Reed shall submit such application and a copy of the Notice of Award issued by the Commissioner within 60 days from receipt of the Notice, which the Court concludes is a reasonable time pursuant to *Gisbrecht v. Barnhart*, 535 U.S. 790, 794 (2002), and Federal Rule of Civil Procedure 60(b)(6).

IT IS SO ORDERED.

DATED this 18th day of December, 2009.

ANNA J. BROWN
United States District Judge

26 - OPINION AND ORDER